UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE MORETTI,

                              Plaintiff,

                -against-

LUXURY CARS OF WESTCHESTER LLC,
DARCARS LEXUS OF MOUNT KISCO,
DARCARS OF KISCO AVENUE INC.,
DARCARS OF MT. KISCO, INC., DARCARS
AUTOMOTIVE GROUP, MIRIAM INC.,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/24/2024

No. 23 Civ. 6067 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Gene Moretti ("Plaintiff") brings this action against Defendant Luxury Cars of Westchester LLC ("Luxury Cars") and Defendants DARCARS Lexus of Mount Kisco, DARCARS of Kisco Avenue Inc., DARCARS of Mt. Kisco, Inc., DARCARS Automotive Group, and Miriam Inc. (collectively, the "DARCARS Defendants") (together, the "Defendants").[1] Plaintiff alleges that his former employer discriminated and retaliated against him on the basis of his disability and sex when he was terminated from his sales position at the Lexus car dealership in Mount Kisco. Plaintiff asserts claims sounding in discrimination and retaliation in violation of the (1) Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; and (3) New York State Human Rights Laws ("NYSHRL"), N.Y. Exec. Law §§ 290 to 297.

Before the Court is the DARCARS Defendants' motion to dismiss Plaintiff's First Amended Complaint. For the following reasons, the Court grants the DARCARS Defendants'

---

[1] Luxury Cars did not seek leave to file a motion to dismiss. On December 4, 2023, Luxury Cars filed an answer to the First Amended Complaint as well as a crossclaim against the DARCARS Defendants. (*See* ECF No. 37.)

motion in its entirety and dismisses Plaintiff's claims without prejudice.

## BACKGROUND

### I.     Factual Allegations

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") and opposition papers, and are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, a man, worked for Luxury Cars from approximately 2014 until August 2020 at the car dealership operating at 275 Kisco Avenue, Mt. Kisco, New York, County of Westchester. (FAC ¶¶ 21-23.) Prior to August 2020, Plaintiff was on medical leave approved by Luxury Cars for his diagnosed anxiety disorder. (*Id.* ¶ 26.) Sometime after August 6, 2020, Plaintiff received a termination letter by mail dated August 3, 2020 and postmarked August 6, 2020. (*Id.* ¶¶ 29-31.) The termination letter was signed by a human resources employee of "Lexus of Mt. Kisco" and reads, in pertinent part:

> This letter officially confirms that your employment through Luxury Cars of Westchester dba Lexus of Mt. Kisco will not be continued through dba DARCARS Lexus of Mt. Kisco, therefore your employment has been terminated as of August 2, 2020.

Plaintiff was terminated while on medical leave. (*Id.* 43.) Plaintiff had always performed his job in a satisfactory manner, was qualified for his position, and prior to his termination, informed his employer that he was "medically ready, willing, and able to work." (*Id.* ¶¶ 47-48.) Specifically, Plaintiff was the highest-grossing salesperson at the car dealership, had excellent performance reviews, no disciplinary history, and glowing customer reviews for the 6 years he worked there. (*Id.* ¶¶ 49-50.)

Around this time, upon Plaintiff's information and belief, the car dealership's business and personnel were sold from Luxury Cars to the DARCARS Defendants. (FAC ¶¶ 33, 43.) None of

the other employees employed by Luxury Cars were terminated except for Plaintiff, including non-disabled and similarly situated employees. (*Id.* ¶¶ 44-46.) Upon Plaintiff's information and belief, the DARCARS Defendants absorbed all the assets and workforce (except Plaintiff) of Luxury Cars and continued allowing those employees to use their original start dates and seniority without any break in employment. (*Id.* ¶ 52.) Upon Plaintiff's information and belief, the effective date of Plaintiff's termination, August 2, 2020, occurred during the time that Luxury Cars operated the car dealership. (*Id.* ¶ 35.) Upon Plaintiff's information and belief, the letter was dated and sent during the time that the DARCARS Defendants operated the car dealership. (*Id.* ¶ 34.)

Upon Plaintiff's information and belief, the sale of the business and all of its employees were discussed between Defendants for a period of weeks, if not months, prior to August 2020. (*Id.* ¶ 53.) Plaintiff alleges this gave all the Defendants notice or constructive notice of Plaintiff's disability, his status on medical leave, and his requests to return to work due to an ability to work full duty. (*Id.* ¶ 54.) Plaintiff further alleges that the "only possible reason" for Plaintiff's termination (or failure to hire or re-hire) is that the DARCARS Defendants did not want to employ someone returning from medical leave with a disability. (*Id.* ¶ 56.)

In or around September 2020, the DARCARS Defendants informed Plaintiff that his termination was a miscommunication and that he should return to work unconditionally. (*Id.* ¶ 90.) Plaintiff was qualified for the job and formally applied for the position. (*Id.* ¶ 91.) At this time, the DARCARS Defendants were fully aware of the entire history of Plaintiff's medical leave and his ability to perform the full duties of the position, particularly given that Plaintiff was communicating with the same supervisors that had been employed by Luxury Cars. (*Id.* ¶ 93.) Plaintiff was not hired for the position, although upon his information and belief, the position remained open or was filled by a person outside the protected class. (*Id.* ¶ 95.) After the DARCARS

Defendants admitted Plaintiff's termination was a miscommunication, Plaintiff received dozens of retaliatory phone calls from supervisors at the car dealership calling Plaintiff discriminatory names, saying discriminatory things, and harassing him. (*Id.* ¶ 116.)

On April 22, 2021, Plaintiff filed a charge of unlawful discriminatory practices related to his employment based on disability, sex, and retaliation with the United States Equal Employment Opportunity Commission. (*Id.* ¶ 17.) The Charge named Luxury Cars of Westchester LLC, DARCARS Lexus of Mount Kisco, and DARCARS Automotive Group d/b/a DARCARS of Kisco Avenue, Inc. (*Id.* Ex. A.)  On May 10, 2023, the EEOC mailed Plaintiff a Dismissal of Charge and a Notice of Right to Sue letter. (*Id.* ¶ 18.)

## II.    Procedural History

Plaintiff filed this action via Complaint on July 14, 2023. (ECF No. 1.) On September 28, 2023, the DARCARS Defendants filed a letter motion seeking leave to move to dismiss Plaintiff's Complaint. (ECF No. 29.) In response, on October 4, 2023, Plaintiff sought leave to amend his Complaint "as a matter of course to attempt to address several of the topics identified in Defendants' pre-motion letters" with the hope of resolving some of the alleged issues. (ECF No. 32.) The next day, the Court granted Plaintiff's request to amend his Complaint, and set a briefing schedule for the DARCARS Defendants' motion to dismiss in the event Plaintiff filed amended pleadings. (ECF No. 33.)

On November 7, 2023, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 34.) On February 9, 2024, the parties filed their respective papers on the DARCARS Defendants' motion to dismiss: the DARCARS Defendants filed their motion to dismiss (ECF No. 48, "Defs. Mem."), which included their Memorandum of Law in Support, and Reply (ECF No. 50, "Reply"); and Plaintiff filed his opposition (ECF No. 49, "Pl. Opp.").

**LEGAL STANDARD**

**I.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint . . . the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

**DISCUSSION**

Plaintiff asserts claims sounding in discrimination, retaliation, and harassment in violation of the ADA, Title VII, and the NYSHRL. For the following reasons, the Court grants the

DARCARS Defendants' motion to dismiss Plaintiff's FAC.[2]

**I.    Joint Employer/Substantial Continuity**

The DARCARS Defendants' primary argument is that they did not employ Plaintiff during the relevant time period. (Defs. Mem. at 10-12.) Specifically, the DARCARS Defendants repeatedly assert that Plaintiff was terminated on August 2, 2020, when Luxury Cars owned and operated the car dealership, and further deny they had any control over Plaintiff's employment. (*Id.*) In response, Plaintiff implores the Court to use its "judicial expertise and common sense" to find that Plaintiff plausibly alleges that the DARCARS Defendants and Luxury Cars "colluded" to terminate Plaintiff. (Pl. Opp. at 6.) Plaintiff alleges the DARCARS Defendants are liable under (1) the "substantial continuity" rule and/or (2) as joint employers. (Pl. Opp. 7-8; FAC ¶¶ 40-41, 89.) Plaintiff argues that he has adequately plead the DARCARS Defendants' involvement in his termination "based upon the language in the termination letter referencing both camps of defendants, the date of the termination letter, and the overall circumstances regarding the sale of the business." (Pl. Opp. at 9, 40.)

An employer-employee relationship is essential to maintain a claim under Title VII and the NYSHRL. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (citations omitted). However, "[a] corporate defendant need not be a plaintiff's direct employer to be liable under [Title VII or the NYSHRL]." *Andrade v. Cultural Care, Inc.*, No. 21CV5237WFKSJB, 2023 WL 8622653, at *7 (E.D.N.Y. Dec. 13, 2023), *appeal withdrawn*, No. 24-136, 2024 WL 1651337 (2d Cir. Mar. 18, 2024) (citing *Farmer v. Shake Shack Enterprises*, LLC, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020)). A "joint employer relationship" exists "when two or more entities, according to common law principles share significant control of the same employee." *Felder v. United States*

---

[2] Because the Court dismisses Plaintiff's claims in their entirety on substantive grounds, it declines to address whether his claims are exhausted with respect to Defendants DARCARS of Mt. Kisco, Inc. and Mariam, Inc.

*Tennis Assn.*, 27 F.4ᵗʰ 834, 843 (2d Cir. 2022). "This means that an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that we may properly conclude that a constructive employer-employee relationship exists." *Id.*

"When two companies collaborated in employment decisions, they may be considered a joint enterprise for the purposes of discrimination liability." *Schneider v. Regency Heights of Windham, LLC*, No. 3:14-CV-00217-VAB, 2016 WL 7256675, *8 (D. Conn. Dec. 15, 2016) (citing *Brown*, 756 F.3d at 227)). If the DARCARS Defendants were a decisionmaker in Plaintiff's termination, then they are potentially liable for discrimination. *Id.* In *Schneider*, the District of Connecticut Court found that the plaintiff's direct employer and two companies that provided management services to plaintiff's direct employer were liable as "joint employers" for purposes of plaintiff's discrimination claim. The Court reasoned that "individuals from the three corporations played integral roles in [Plaintiff's termination]." *Id.* at *9.

Despite the DARCARS Defendants' repeated denials, the Court must accept as true all well-pleaded allegations in Plaintiff's FAC at this stage of the litigation. Here, Plaintiff has plausibly alleged that the DARCARS Defendants had some decision-making authority over Plaintiff's employment. Most significantly, Plaintiff alleges that he received a letter from the DARCARS Defendants stating that his termination was a "miscommunication" and that he should be returned to work. (FAC ¶ 90.) The DARCARS Defendants addressing Plaintiff's termination raises a reasonable inference that they had some involvement in his termination. If they have the authority to remedy his supposedly mistaken termination, they presumably had the authority to terminate him in the first place. Notably, the DARCARS Defendants fail to address this allegation in their moving papers. Moreover, the termination letter received by Plaintiff states that his

employment "will not be *continued through*" the transfer of ownership. While the DARCARS Defendants repeatedly emphasize that the effective date of termination is August 2, 2020, the letter was dated August 3, 2020 and postmarked August 6, 2020. Throughout their papers, the DARCARS Defendants avoid explicitly stating when they began operating the car dealership. Finally, as Plaintiff repeatedly emphasizes, all other employees remained employed at the car dealership between its ownership by Luxury Cars and its purchase by the DARCARS Defendants. Considering these allegations together and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has plausibly alleged that the DARCARS Defendants had some involvement, if not control, over employment decisions for the Lexus car dealership. For clarity, the Court does not hold that Plaintiff has affirmatively established the DARCARS Defendants had any decision-making authority over Plaintiff's termination. Plaintiff has only plausibly alleged the DARCARS Defendants acted as an employer sufficient to survive a motion to dismiss. That said, Plaintiff has failed to state a claim for which relief can be granted.

## II.    Disability Discrimination

Plaintiff alleges the DARCARS Defendants discriminated against him because of his disability when they terminated him while he was on medical leave. The DARCARS Defendants contends that Plaintiff has failed to allege (1) that he has a disability or (2) that there is a nexus between his alleged disability and his termination. (Defs. Mem. at 12-15.) The Court analyzes Plaintiff's disability discrimination claim under the ADA and the NYSHRL in turn.

### A.  ADA

The DARCARS Defendants argue that Plaintiff has failed to allege that he suffers from a disability that "substantially impairs" a major life activity. (Defs. Mem. at 12-13.) In response,

Plaintiff contends he has met the *de minimis* burden of establishing a *prima facia* discrimination claim. The Court agrees with the DARCARS Defendants.

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a *prima facie* claim of discrimination under the ADA, a Plaintiff must allege "(1) that [he] is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [he] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y].'" *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)) (all but first alterations in original). That said, at the pleading stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (citing *Dooley v. Jetblue Airways Corp.*, 636 Fed. Appx. 16, 19–21 (2d Cir. 2015)).

"Under the ADA, a qualifying disability must limit a major life activity and the limitation must be substantial." *Id.* at *3 (citing *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020)). The ADA contains a non-exhaustive list of "major life activities," which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Factors to consider in determining whether a major life activity is substantially limited include: the nature

and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (citing *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)).

In this case, Plaintiff talks out of both sides of his mouth. On the one hand, Plaintiff claims that his anxiety condition "substantially limited" his work by requiring him to take medical leave. On the other hand, Plaintiff claims that he was "regarded as disabled when he was no longer disabled," so he need not show that this impairment limited a major life activity. (Pl. Opp. at 9-10.) Regardless of either claim Plaintiff purports to make, Plaintiff fails to plausibly allege his "anxiety disorder" substantially impaired a major life activity or was perceived to substantially impair a major life activity sufficient to plead a disability under the ADA.

In his FAC, Plaintiff alleges he has "a diagnosed anxiety disorder that caused him to require medical leave, which qualifies as a disability." (FAC ¶ 26.) That's it. Plaintiff otherwise does not allege any additional facts regarding his anxiety disorder, including *how* his anxiety disorder substantially limited his ability to work. Therefore, Plaintiff has failed to plausibly allege he suffers from a disability. *See Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 151-52 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the Complaint fails to plead that plaintiff was disabled."); *see also Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28-29 (2d Cir. 2014) (affirming district court dismissal of disability claim where plaintiff "did not allege any *facts* from which a court could plausibly infer" his medical condition substantially limited life activities) (emphasis in original); *Collins v. Giving Back Fund*, No. 18 CIV. 8812 (CM), 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (plaintiff is required "to do more than simply allude to [his] impairments

in [his] pleading; [he] must plead how those impairments significantly impacted [his] major life activities, or [he] will not survive a motion to dismiss.") (emphasis in original).

Plaintiff's assertion that his anxiety disorder required him to take leave, without more, is insufficient to save his claim. While Plaintiff taking medical leave may prove that he suffers from *some* impairment, it falls short of establishing that that impairment substantially limited his ability to work. *Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 639 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009) ("To constitute a disability an impairment must not merely affect a major life activity, it must 'substantially limit' that activity.") (citing *Sussle v. Sirina Prot. Sys. Corp.*, 269 F.Supp.2d 285, 296 (S.D.N.Y. 2003)); *c.f. Santos v. City of New York*, No. 01 CIV. 0120 (SAS), 2001 WL 1568813, at *5 (S.D.N.Y. Dec. 7, 2001) (plaintiff plausibly alleged she was substantially limited in the major life activity of working where she plead facts that her pre-existing stress and anxiety disorder was aggravated by her supervisor and required her to take medical leave).

Regarding his perceived disability claim, Plaintiff does not even allege that any of the Defendants regarded him as disabled when he was no longer disabled. "For a plaintiff to prevail on a perceived disability claim, he or she would have to show (1) that the employer treated plaintiff as having an impairment that substantially limited one or more of the plaintiff's major life activities and (2) that either (a) while he or she had a physical or mental impairment, it was not substantially limiting or (b) that he or she did not suffer at all from a statutorily prescribed physical or mental impairment." *Greenberg v. New York State*, 919 F. Supp. 637, 641 (E.D.N.Y. 1996) (citation omitted). To determine whether a plaintiff has alleged discrimination based on a perceived disability under the ADA, courts undertake a two-pronged inquiry. The Court must determine (1) if the plaintiff is perceived to have a physical or mental impairment and (2) if so, whether the

impairment is perceived to substantially limited one or more of that person's major life activities. *Id.* at 641-42.

Drawing all inferences in Plaintiff's favor, the Court understands Plaintiff to argue that he was regarded as disabled because he was terminated despite telling Defendants that he was ready and able to work. This conclusory argument, however, falls short of stating a plausible claim. While Plaintiff need not plead specific facts on a motion to dismiss, he still must plead sufficient facts to "nudge" his claim across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. Plaintiff fails to do so.

Plaintiff asserts a single, conclusory allegation that his anxiety condition substantially limited his work abilities or the DARCARS Defendants perceived it to do so without any additional details. Plaintiff fails to plausibly allege disability discrimination under the ADA. Accordingly, the Court dismisses this claim.

### B. *NYSHRL Claims*

The NYSHRL prohibits discrimination, retaliation, and harassment based on sex, race, national origin, disability, and other protected classes. N.Y. Exec. Law §§ 290 *et seq.* The NYSHRL further provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6).

To plead a SHRL discrimination claim, a plaintiff must show "(1) [he] suffers from a disability as that term is defined under the statute, and (2) that the disability caused the behavior for which [he] was terminated." *Anyan v. New York Life Ins. Co.*, 192 F. Supp. 2d 228, 245 (S.D.N.Y. 2002), *aff'd sub nom. Anyan v. Nelson*, 68 F. App'x 260 (2d Cir. 2003) (citation omitted). Under the NYSHRL, the definition of disability is "significantly broader than the ADA definition."

*Anyan*, 192 F. Supp. 2d at 245; *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162, 163 n. 11 (S.D.N.Y. 2011). "Any medically diagnosable impairment is sufficient." *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 631 (S.D.N.Y. 2007) (citation omitted).

Under the NYSHRL's broader definition, Plaintiff plausibly pleads he suffers from a disability. Plaintiff alleges that he "had a *diagnosed* anxiety disorder that caused him to require medical leave." (FAC ¶ 26 (emphasis added).) Drawing all reasonable inferences in Plaintiff's favor, the Court finds this sufficient for Plaintiff to plausibly allege he suffers from a "medically diagnosable impairment." Having established that Plaintiff suffers from a disability under the NYSHRL, the Court addresses whether Plaintiff has established the requisite connection between his disability and his termination.

As discussed above, Plaintiff fails to allege that any of the Defendants perceived him as disabled. Therefore, he cannot assert a perceived disability claim. To the extent that Plaintiff alleges a discrimination claim based on disparate treatment, that claim also fails. Plaintiff claims his termination raises an inference of discriminatory intent because (1) he was terminated while on leave and (2) none of the non-disabled salespersons were terminated. (FAC ¶¶ 64, 44.) In response, the DARCARS Defendants contend that Plaintiff has failed to plausibly allege the requisite nexus between his disability and his termination. (Reply at 6.) The Court agrees with the DARCARS Defendants.

"An inference of discrimination can arise from circumstances including more favorable treatment of employees not in the protected group." *Johnson v. Andy Frain Servs.*, Inc., 638 F. App'x 68, 70 (2d Cir. 2016) (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir.2015)). "However, a plaintiff relying on disparate treatment evidence must show [he] was similarly situated in all material respects to the individuals with whom she seeks to compare [himself]." *Id.*

(citing *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir.2003) (internal quotations omitted).

Here, Plaintiff fails to allege that he was similarly situated to the other car dealership employees. In fact, Plaintiff does not allege any facts to support his assertion that he was terminated because of his disability. Rather, Plaintiff advances conclusory statements that "none of the non-disabled salespeople were terminated around the time of the business" and "none of the employees similarly situated to Plaintiff outside of his protected class were terminated in this timing and manner." (FAC ¶¶ 44-46.) Plaintiff must do more than assert that "[t]he only possible reason for Plaintiff's termination . . . is that the DARCARS Defendants did not want to employ someone returning from medical leave with a disability." (FAC ¶ 56.) Plaintiff's conclusory statements are insufficient to raise an inference of discriminatory intent. Therefore, the Court dismisses Plaintiff's disability discrimination claim under the NYSHRL.

## II.   Sex Discrimination and Retaliation

Plaintiff alleges that he faced discrimination and retaliation because of his gender when the DARCARS Defendants failed to hire or re-hire him in violation of Title VII and the NYSHRL. (FAC ¶ 114-115.) For the reasons stated below, Plaintiff has failed to plead a sex-based discrimination or retaliation claim.

Plaintiff's sex-based discrimination and retaliation claims are a bit murky. That said, the Court understands Plaintiff to allege that the DARCARS Defendants discriminated and retaliated against him (1) when they rejected him for an employment position after they told him that his termination was a miscommunication; and (2) by sending him dozens of phone calls calling him discriminatory names, saying discriminatory things, and harassing him with comments regarding his sex and/or sexual orientation. (FAC ¶¶ 90-95, 116.) With regards to his retaliation claim, Plaintiff alleges he suffered retaliation because his attorney wrote a letter on September 4, 2020.

(*Id.*) Plaintiff does not elaborate further on this supposed letter sent by his attorney. Plaintiff further claims that he understood that he could not return to the workplace because of this discriminatory and retaliatory conduct, and that it further exacerbated his medical condition. (*Id.*¶¶ 117-118.) The Court addresses Plaintiff's retaliation claim and discrimination claim in turn.

> a. *Retaliation Claim*

The Court understands Plaintiff to allege that the protected activity underlying his retaliation claim was his attorney writing a letter to the DARCARS Defendants "regarding discrimination." (Pl. Opp. 11-13.) First, Plaintiff does not allege this in his FAC. Plaintiff's FAC merely reads: "[b]ecause of these discriminatory acts and the additional retaliation after his attorney wrote a letter on September 4, 2020, Plaintiff's medical condition has been exacerbated and Plaintiff has continued mental health treatment." (FAC ¶ 118.) The September 4, 2020 letter is mentioned nowhere else in Plaintiff's FAC. Although Plaintiff provides some clarification in his Opposition, it is insufficient to save his claim.

The same standards govern retaliation claims under Title VII and the NYSHRL. *Farmer*, 473 F. Supp. 3d at 330. "To demonstrate a prima facie case of retaliation, a plaintiff must establish: (1) that she participated in an activity protected by Title VII [and the NYSHRL], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Id.* (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). "The plaintiff's burden of proof at the *prima facie* stage is 'de minimis.'" *Id.* (citing *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)). At the motion to dismiss stage, Plaintiff need only give "plausible support" to the reduced *prima facie* requirements. *Id.* Even with this minimal burden, Plaintiff fails to plausibly allege that he engaged in protected

activity and certainly that the discriminatory and retaliatory acts were because of the letter.

Plaintiff again relies on conclusory statements with far too few factual allegations to plausibly to state a claim. Plaintiff's FAC does not indicate the nature or contents of the September 4, 2020 letter, including whether it complained of discrimination or retaliation by the DARCARS Defendants.[3] Even it if had, there are other issues. Plaintiff does not tie the September 4, 2020 letter in any way to the alleged discriminatory and retaliatory acts beyond a conclusory statement that one followed the other. Plaintiff does not allege that anyone employed by the DARCARS Defendants received the letter, including the employees who actually engaged in the allegedly retaliatory and discriminatory behavior. While the Court may reasonably infer that the alleged discrimination and retaliation followed the letter—although, Plaintiff only alleges that the alleged discrimination and retaliation occurred after the DARCARS Defendants admitted his termination was a miscommunication—Plaintiff does not allege facts with regards to when or how soon thereafter the alleged misconduct followed. Instead, Plaintiff states in a conclusory manner that the DARCARS Defendants engaged in these retaliatory acts because Plaintiff "complained and opposed Defendant[s'] discriminatory conduct and promotion policies," without any additional details. Because Plaintiff's factual allegations fall short of plausibly alleging a claim of retaliation, the Court dismisses this claim.

### b. *Gender Discrimination*

Under Title VII, it is unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[3] In his Opposition, Plaintiff indicates that his attorney "wrote a letter to the dealership regarding discrimination." (Pl. Opp. 11.) However, the Court declines to consider Plaintiff's factual allegations not previously asserted in the FAC. As Plaintiff said himself, "only the facts alleged or relied upon in the complaint may be considered, with certain very limited exceptions. (Pl. Opp. at 6); *In re Colonial Ltd. Partnership Litigation*, 854 F.Supp. 64, 79 (D.Conn.1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss."). Regardless, even if the Court did exercise its discretion to consider it, the statement is still too vague for Plaintiff to sufficiently allege he engaged in protected activity.

employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, under

the NYSHRL, it is unlawful for "an employer . . . because of an individual's . . . sexual orientation

[or] gender identity or expression, . . . to refuse to hire or employ or to bar or to discharge from

employment such an individual or to discrimination against such an individual in compensation or

in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1). "For employment

discrimination claims under Title VII or the NYSHRL, a plaintiff must plausibly allege that (1)

the employer took adverse action against him and (2) his race, color, religion, sex, or national

origin was a motivating factor in the employment decision." *Farmer*, 473 F.Supp.3d at 324

(quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

Plaintiff alleges that following his termination in August 2020 and the DARCARS

Defendants informing him that his termination was a miscommunication in September 2020, he

received dozens of discriminatory and retaliatory phone calls from supervisors at the dealership.

(FAC ¶ 116.) The DARCARS Defendants challenge Plaintiff's Title VII and NYSHRL claim on

the grounds that Plaintiff was not an employee of the DARCARS Defendants at the time of the

alleged discrimination. (Defs. Mem. at 12.) Plaintiff does not directly address this argument in his

Opposition, and instead seemingly lumps his discrimination claim together with his retaliation

claim. (*See* Pl. Opp. at 12.) Plaintiff's failure to address the DARCARS Defendants argument is

sufficient grounds for the Court to dismiss this claim. *Black Lives Matter v. Town of Clarkstown*,

354 F. Supp. 3d 313 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed

abandonment of the claim.").

Even if the Court were to consider the claim on the merits, the claim is properly dismissed.

Plaintiff fails to plead facts sufficient to raise an inference of discriminatory intent. "As a general

matter, verbal comments may raise an inference of discrimination, but not where they lack a causal

nexus to the termination decision." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). The Second Circuit considers four factors to determine whether alleged offensive remarks suggest discriminatory bias: "(1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision making process." *Dinis v. New York City Dep't. of Educ.*, No. 22CV7741VECJW, 2024 WL 1421160, at *12 (S.D.N.Y. Feb. 8, 2024), *report and recommendation adopted as modified sub nom. Dinis v. New York City Dep't of Educ.*, No. 22CV7741VECJW, 2024 WL 1208912 (S.D.N.Y. Mar. 21, 2024) (quoting *Schreiber v. Worldco*, LLC, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)).

Plaintiff's factual allegations are insufficient for the Court to even undertake this analysis. Plaintiff alleges these statements were made by "supervisors," but does not indicate who or whether they had any involvement in hiring decisions. Plaintiff vaguely alleges these comments were made sometime "after Defendant admitted his termination was a miscommunication" without specifying a meaningful time frame. Despite being vague, given that Plaintiff alleges that he received "dozens" of phone calls, the Court is wary to call the alleged discriminatory and retaliatory comments "stray remarks." However, Plaintiff has failed to plead sufficient facts that these comments are related in any way to any adverse employment action. Accordingly, the Court dismisses Plaintiff's gender discrimination claim.

## III.    Failure to Hire/Re-Hire

Finally, although not clear in his FAC, Plaintiff appears to allege a failure to hire/re-hire claim. A plaintiff alleging a failure to hire or rehire claim under Title VII or the NYSHRL must demonstrate that: "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for

a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (citing *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir.2009)). Again, Plaintiff's factual allegations are insufficient to plausibly state a claim.

"A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. *Rosenfeld*, 370 F. Supp. 3d 335, 348 (E.D.N.Y. 2019) (citing *Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)). Without additional factual allegations, "Plaintiff's conclusory statement 'upon information and belief' . . . does not cross the line from conceivable to plausible." *Id.* (citations and internal quotations omitted).

Here, Plaintiff alleges "[u]pon information and belief, the position either remained open or was filled by a person outside of the protected class" without any additional facts to substantiate this belief. (FAC ¶ 94.) Generally, the availability of a position at private company is public information (otherwise they would receive no applicants) unless the position is only available to internal applicants. Of course, Plaintiff could also inquire of the DARCARS Defendants or its current employees as to whether the position was filled. Instead, Plaintiff speculates as to whether the position was filled at all, and then asserts that if the position was fulfilled, it was by someone outside of his protected class. Even more, Plaintiff does not allege the relevant protected class— although he presumably means either disabled and/or male individuals. Plaintiff's allegations are nothing more than conjecture and cannot support a plausible claim of failure to hire or rehire.

## IV.    Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v.*

*Celli,* 228 F.3d 68, 81 (2d Cir.2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir.2006).

Given that Plaintiff's factual allegations are particularly sparse, the Court finds it appropriate for Plaintiff to have the opportunity to plead additional facts to flesh out his claims. Moreover, Plaintiff's FAC was the first pleading for which motion practice occurred. Accordingly, Plaintiff's claims are dismissed without prejudice and Plaintiff is granted leave to file a Second Amended Complaint.

## CONCLUSION

The Court GRANTS the DARCARS Defendants' motion to dismiss in its entirety. Plaintiff's claims are dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint by May 24, 2024. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, the DARCARS Defendants are directed to answer or otherwise respond by June 14, 2024. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 48.

Dated: April 24, 2024                                   SO ORDERED.
       White Plains, NY

_____

NELSON S. ROMÁN
United States District Judge