USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE MORETTI,

                      Plaintiff,

   -against-

LUXURY CARS OF WESTCHESTER LLC,
DARCARS LEXUS OF MOUNT KISCO,
DARCARS OF KISCO AVENUE, INC.,
DARCARS OF MT. KISCO, INC., DARCARS
AUTOMOTIVE GROUP, and MARIAM INC.,

                      Defendants.

7:23-cv-6067 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Gene Moretti (the "Plaintiff") brings this action against Defendant Luxury Cars of Westchester LLC ("Luxury Cars") and Defendants DARCARS Lexus of Mount Kisco, DARCARS of Kisco Avenue Inc., DARCARS of Mt. Kisco, Inc., DARCARS Automotive Group, and Miriam Inc. (collectively, the "DARCARS Defendants" or the "Defendants"). Plaintiff alleges that his former employer discriminated against him on the basis of his disability when he was terminated from his sales position at the Lexus car dealership in Mount Kisco.[1] Plaintiff asserts claims sounding in discrimination in violation of (1) the Americans with Disabilities Act of 1990 ("ADA") and (2) New York State Human Rights Laws ("NYSHRL"), N.Y. Exec. Law § 296.

    Before the Court is the DARCARS Defendants' motion to dismiss Plaintiff's Second

---

[1] The Court notes that Plaintiff's Second Amended Complaint includes claims sounding of retaliation, sex discrimination, and failure to re-hire that were previously included in Plaintiff's First Amended Complaint, which the Court dismissed. Plaintiff's Opposition brief makes clear that he intended to abandon those claims in the Second Amended Complaint and that this case is "only a discrimination case." Opposition at 17. Accordingly, the Court will only address the claims related to discrimination.

Amended Complaint (the "SAC"). For the following reasons, the Court GRANTS the DARCARS Defendants' motion.

## BACKGROUND

Plaintiff worked for Luxury Cars from approximately 2014 until August 2020 at the car dealership operating at 275 Kisco Avenue, Mt. Kisco, New York, County of Westchester. (SAC ¶¶ 21-23.) Prior to August 2020, Plaintiff was on medical leave approved by Luxury Cars for his diagnosed anxiety disorder. (*Id.* ¶ 24.) Sometime after August 6, 2020, Plaintiff received a termination letter dated August 3, 2020 and postmarked August 6, 2020. (*Id.* ¶¶ 37-39.) The termination letter was signed by a human resources employee of "Lexus of Mt. Kisco" and reads:

> This letter officially confirms that your employment through Luxury Cars of Westchester dba Lexus of Mt. Kisco will not be continued through dba DARCARS Lexus of Mt. Kisco, therefore your employment has been terminated as of August 2, 2020.

(*Id.* ¶ 40.) Plaintiff was terminated while on medical leave. (*Id.* ¶ 51.) Plaintiff had always performed his job in a satisfactory manner, was qualified for his position, and prior to his termination, informed his employer that he was "medically ready, willing, and able to work." (*Id.* ¶ 56.) Specifically, Plaintiff was the highest-grossing salesperson at the car dealership, had excellent performance reviews, no disciplinary history, and glowing customer reviews for the six years he worked there. (*Id.* ¶ 57.)

Around the time of his termination, and upon Plaintiff's information and belief, the car dealership's business and personnel were sold from Luxury Cars to the DARCARS Defendants.

(*Id*. ¶ 41.) None of the other employees employed by Luxury Cars were terminated except for Plaintiff, including non- disabled and similarly situated employees. (*Id*. ¶¶ 52-53.) Upon Plaintiff's information and belief, the DARCARS Defendants absorbed all the assets and workforce (except Plaintiff) of Luxury Cars and continued allowing those employees to use their original start dates and seniority without any break in employment. (*Id*. ¶ 60.) Upon Plaintiff's information and belief, the effective date of Plaintiff's termination, August 2, 2020, occurred during the time that Luxury Cars operated the car dealership. (*Id*. ¶ 43.)

Upon Plaintiff's information and belief, the letter was dated and sent during the time that the DARCARS Defendants operated the car dealership. (*Id*. ¶ 42.) Upon Plaintiff's information and belief, the sale of the business and all its employees were discussed between Defendants for a period of weeks, if not months, prior to August 2020. (*Id*. ¶ 61.) Plaintiff alleges this gave all the Defendants notice or constructive notice of Plaintiff's disability, his status on medical leave, and his requests to return to work due to an ability to work full duty. (*Id*. ¶ 62.) Plaintiff further alleges that the "only possible reason" for Plaintiff's termination (or failure to hire or re-hire) is that the DARCARS Defendants did not want to employ someone returning from medical leave with a disability. (*Id*. ¶ 64.)

In or around September 2020, the DARCARS Defendants informed Plaintiff that his termination was a miscommunication and that he should return to work unconditionally. (*Id*. ¶ 98.) Plaintiff was qualified for the job and formally applied for the position. (*Id*. ¶ 99.) At this time, the DARCARS Defendants were fully aware of the entire history of Plaintiff's medical leave and his ability to perform the full duties of the position, particularly given that Plaintiff was communicating with the same supervisors that had been employed by Luxury Cars. (*Id*. ¶ 101.)

Plaintiff was not hired for the position, although upon his information and belief, the position remained open or was filled by a person outside the protected class. (*Id.* ¶ 103.)

On April 22, 2021, Plaintiff filed a charge of unlawful discriminatory practices related to his employment based on disability, sex, and retaliation with the United States Equal Employment Opportunity Commission. (*Id*. ¶ 17.) The Charge named Luxury Cars of Westchester LLC, DARCARS Lexus of Mount Kisco, and DARCARS Automotive Group d/b/a DARCARS of Kisco Avenue, Inc. (*Id*. Ex. A.) On May 10, 2023, the EEOC mailed Plaintiff a Dismissal of Charge and a Notice of Right to Sue letter. (*Id*. ¶ 18.)

## PROCEDURAL HISTORY

On July 14, 2023, Plaintiff commenced this action by filing the Complaint. (ECF No. 1.) On November 7, 2023, Plaintiff filed the First Amended Complaint ("FAC") after being granted leave from the Court. (ECF No. 34.) On April 24, 2024, the Court issued its Order & Opinion dismissing the FAC for failure to state a claim without prejudice ("*Moretti I*"). (ECF No. 51.) On May 31, 2024, Plaintiff filed the Second Amended Complaint ("SAC"). (ECF No. 56.) On September 30, 2024, Defendants filed a motion to dismiss the SAC (ECF Nos. 64, 69.) along with a Memorandum of Law in Support ("MoL."). (ECF Nos. 66, 69.) On the same day, Plaintiff filed two Memoranda of Law in Opposition ("Opp."). (ECF Nos. 67, 70.) Defendants also filed their Reply ("Reply"). (ECF Nos. 68, 71.)

## LEGAL STANDARDS

### A. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action "when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019). "The party invoking

federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). When deciding a Rule 12(b)(1) motion, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143. "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

    B.  Rule 12(b)(6) Failure to State a Claim

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

### A. Identity of Interest

Defendants argue that the Court lacks subject matter jurisdiction over Defendants DARCARS of Mt. Kisco, Inc. and Mariam, Inc. due to Plaintiff's failure to name them in his EEOC charge. Normally, a prerequisite to filing a claim under the ADA is exhaustion of relevant administrative remedies—here, the filing of an EEOC complaint. Plaintiff failed to do so. The Second Circuit, however, has recognized an exception to the general rule that a Defendant must be named in the EEOC complaint before commencing an action, which is often referred to as the "identity of interest" exception. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). The Second Circuit adopted the following four-part test to determine when such an exception applies:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and
>
> (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id*. In *Johnson*, the court noted that the rationale behind this exception was that "these charges generally are filed by parties not versed in the vagaries of [the ADA] and its jurisdictional and pleading requirements, we have taken a 'flexible stance in interpreting [its] procedural provisions.'" *Id*. Following this rationale, courts have split on whether this exception

may apply when counsel files the EEOC complaint as opposed to when an unrepresented party files the EEOC complaint. Certain courts have found that if counsel filed the EEOC complaint and failed to name certain parties, the exception cannot apply. *See Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949, 954 (S.D.N.Y. 1995) (concluding that "[a]s a threshold matter, this exception only applies where plaintiff is not represented by counsel."); *Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 478 (S.D.N.Y.1998) (holding that "this exception, however, applies only where a plaintiff was not represented by counsel when she filed her EEOC charge"); *Tarr v. Credit Suisse Asset Management, Inc.*, 958 F. Supp. 785, 794 (E.D.N.Y. 1997) (same). Other courts have found that representation by counsel is not a procedural bar to the exception applying. *See Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 787–88 (E.D.N.Y. 1999) (holding that representation by counsel is a relevant consideration but not dispositive in determining if the exception may apply). And others have found that the identity of interest exception could apply when the plaintiff's counsel in the administrative proceeding was unfamiliar with Title VII but could not apply when counsel had such familiarity. *See Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2001) (finding that because Plaintiff was represented by counsel who had experienced in employment law litigation, failure to identify the proper parties was inexcusable and the exception could not apply).

Here, and as Plaintiff admits, he was represented by counsel when the EEOC complaint was filed.[2] The lack of clarity on the application of the "identity of interest" exception when a party is represented at the time of filing, as well as Plaintiff's counsel's failure to provide the

---

[2] The Court also takes note, to the extent relevant, that Plaintiff's counsel's firm website indicates that he has experience with discrimination cases. *See* https://pseeliglaw.com/attorney/seelig-philip/ (last visited August 16, 2025).

7

Court with a thorough analysis for how the *Johnson* factors apply, gives this Court pause.[3] The Court reads Plaintiff's lack of a thorough and focused argument on the application of the *Johnson* factors to basically concede the point that they are not in his favor. Moreover, given that there is authority in this district that a court may find representation at the time of filing as dispositive in assessing if the exception may apply, the Court finds that the exception does not. Accordingly, the Court dismisses Defendants DARCARS of Mt. Kisco, Inc. and Mariam, Inc. from this action for lack of subject matter jurisdiction with prejudice.

**B. ADA Claims**

1. Discrimination

Plaintiff brings a claim of discrimination against the Defendants for his alleged wrongful termination (or failure to hire or re-hire) under the ADA. "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013) (internal quotation marks omitted). Under *McDonnell Douglas*, plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If satisfied, the burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions. Plaintiff then must show that the proffered reason was merely pretext for discrimination. *See Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). A prima facie case of discrimination under the ADA requires a Plaintiff to show: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to

---

[3] Plaintiff's counsel provides more of a policy argument related to judicial efficiency and convenience to the parties to not have to file a separate complaint in state court as opposed to the proper application of the *Johnson* factors.

perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See McMillan*, 711 F.3d at 125.

  Here, the only factor at issue is whether Plaintiff was disabled within the meaning of the ADA. In *Moretti I*, the Court dismissed Plaintiff's claim of discrimination for failure to adequately plead that Plaintiff's disability substantially limited his ability to work. *See Moretti I* at 10 (determining that Plaintiff's allegation that he has "a diagnosed anxiety disorder that caused him to require medical leave, which qualifies as a disability" was, without more, insufficient to plead substantial impairment as required under the ADA). In the SAC, Plaintiff has added further factual detail explaining how his disability impaired his ability to work. Plaintiff avers that "Plaintiff's disability substantially limited one or more major life activities, including working . . . [s]pecifically, Plaintiff's anxiety caused him severe fatigue, trouble sleeping, difficulty concentrating and remembering, worrying, shortness of breath at times, brain fog, flutters in the chest, and related anxiety symptoms." (SAC ¶ 26-27). Plaintiff continues that his disability hindered his ability to function as a salesperson who is required to stand for prolonged periods, to walk, to interact with the public, to concentrate, and to think and interact appropriately in the workplace with customers and supervisors. (*Id.* ¶ 30). Though Plaintiff has provided more factual detail related to his disability than in the FAC, they remain deficient.

  An individual cannot be considered disabled under the ADA where the impairment is "transitory and minor." 42 U.S.C. § 12102(3)(B). A transitory impairment is an impairment with an actual or expected duration of six months or less. *Id*. Courts in this Circuit have regularly dismissed complaints that alleged injuries that were transitory and minor. *See Llano v. New York City Health & Hosps. Corp.*, No. 13 CIV. 5820 RJS, 2014 WL 1302654 at *2 (S.D.N.Y. Mar. 31, 2014) (concluding that "because Plaintiff does not allege that her nausea or complications

were more than minor or lasted more than six months, or were perceived to last more than six months" she cannot be considered disabled under the ADA); *Thomson v. Odyssey House*, No. 14-CV-3857 MKB, 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (determining that because alleged injury only required several weeks of leave, it could not be considered a disability under the ADA); *Shaughnessy v. Xerox Corp.*, No. 12–CV–6158, 2015 WL 1431687, at *3 (W.D.N.Y. Mar. 27, 2015) (finding that plaintiff's ankle sprain that required approximately one month of leave was not a disability within the meaning of the ADA); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 408–09 (E.D.N.Y. 2010) (dismissing ADA claim because plaintiff was cleared to return to work within two months). Plaintiff alleges no facts illustrating the duration of Plaintiff's disability such that the Court can determine that his disorder was not transitory and minor. The only allegation in the SAC that speaks to the timing of the disability is that Plaintiff notified Defendants that he was prepared to return to work sometime in the beginning of August 2020. (*Id.* ¶ 23.) But there is nothing in the SAC that indicates when Plaintiff first went out on medical leave and that his leave was longer than six months. Accordingly, Plaintiff's claim of discrimination related to his termination are dismissed for failure to adequately allege that he was disabled under the ADA.

## 2. Perceived Disability

For a plaintiff to prevail on a perceived disability claim, he or she would have to show (1) that the employer treated plaintiff as having an impairment that substantially limited one or more of the plaintiff's major life activities and (2) that either (a) while he or she had a physical or mental impairment, it was not substantially limiting or (b) that he or she did not suffer at all from a statutorily prescribed physical or mental impairment." *Greenberg v. New York State*, 919 F. Supp. 637, 641 (E.D.N.Y. 1996) (citation omitted). To determine whether a plaintiff has alleged

10

discrimination based on a perceived disability under the ADA, courts undertake a two-pronged inquiry. The Court must determine (1) if the plaintiff is perceived to have a physical or mental impairment and (2) if so, whether the impairment is perceived to substantially limited one or more of that person's major life activities. *Id*. at 641-42.

Here, Plaintiff's perceived disability claim mirrors his previous perceived disability claim that the Court dismissed in *Moretti I*. As the Court concluded then, it concludes again now that Plaintiff's SAC fails to state a claim. As the Court previously determined,

> Drawing all inferences in Plaintiff's favor, the Court understands Plaintiff to argue that he was regarded as disabled because he was terminated despite telling Defendants that he was ready and able to work. This conclusory argument, however, falls short of stating a plausible claim. While Plaintiff need not plead specific facts on a motion to dismiss, he still must plead sufficient facts to nudge his claim across the line from conceivable to plausible.

*Moretti I* at 12. The Court has no further factual details that illustrate how Plaintiff was perceived to be disabled by Defendants and that they viewed his disability to be substantially limiting. Accordingly, Plaintiff's perceived disability claim is dismissed for failure to adequately allege that he was perceived to be disabled under the ADA.

### 3. Failure to Accommodate

Plaintiff also claims that Defendants failed to provide a reasonable accommodation for his disability and that they failed to engage in the interactive process. To state a failure to accommodate claim, a Plaintiff must show: (1) that plaintiff is a person with a disability under

the meaning of the ADA; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). Plaintiff bears the burdens of both production and persuasion that there is some accommodation that would allow the employee to perform the essential functions of their employment. *See McMillan*, 711 F.3d at 125.

Here, as mentioned *supra*, Plaintiff has not properly stated that he suffered from a disability within the meaning of the ADA. But further, Plaintiff has not made clear in his SAC whether he asked for a reasonable accommodation. Plaintiff alleges that Defendants "failed to engage in the interactive reasonable accommodation process in the event that he needed one." (SAC ¶ 77.) "But the ADA places the onus on the employee to ask for help, not on the employer to proactively offer it." *Graham v. Macy's Inc.*, No. 14 CIV. 3192 PAE, 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (citing *MacEntee v. IBM*, 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) *aff'd sub nom. MacEntee v. IBM*, 471 F. App'x 49 (2d Cir. 2012)). As such, "[i]naction does not violate the ADA unless [the employee] previously notified [the employer] of her disability and requested accommodations." *Id*. Plaintiff's allegation that there was a failure to engage "in the event that he needed" one leaves the allegation murky as to whether a request was ever actually made. Moreover, Plaintiff seems to be speaking out of both sides of his mouth again. The SAC is replete with allegations that Plaintiff was ready, willing, and able to work his full duties with or without a reasonable accommodation. (*Id*. ¶ 23, 56, 62, 88.) Plaintiff cannot have it both ways. Accordingly, the Court dismisses Plaintiff's failure to accommodate claim.

12

### C. NYSHRL Claims

Because the Court has dismissed all claims over which it had original jurisdiction it declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c). Accordingly, Plaintiff's claims brought under the NYSHRL are dismissed.

### D. Leave to Amend

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, the Court is not yet convinced that an opportunity to replead would be futile. Accordingly, the Court grants Plaintiff leave to amend the complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Defendants DARCARS of Mt. Kisco, Inc. and Mariam, Inc. are dismissed from this action with prejudice. Defendants Luxury Cars of Westchester, LLC, DARCARS Lexus of Mount Kisco, DARCARS of Kisco Avenue, Inc., and DARCARS Automotive Group remain. The remaining claims in Second Amended Complaint ("SAC") are deemed dismissed in their entirety without prejudice. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 64 and 69.

Plaintiff is granted leave to file a Third Amended Complaint ("TAC") against the remaining defendant(s). Plaintiff shall have until September 22, 2025, to do so, consistent with this Order. Plaintiff is advised that the TAC will replace, not supplement the SAC, and so any

claims he wishes to pursue must be included in the TAC. Should Plaintiff file a TAC, the defendant(s) is directed to answer or otherwise respond to TAC by October 15, 2025.

If Plaintiff fails to file a TAC within the time allowed, those claims dismissed without prejudice by this Order will be deemed dismissed with prejudice and the case will be deemed terminated.

Dated: August 20, 2025   SO ORDERED:
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge